[No. 2115.]

## Tom Coffelt v. The State.

1. **Practice — Impeachment of Witness — Case Approved.—** In a trial for theft it appeared that H., a State's witness, had lived some seven or eight years in a certain neighborhood, and that, some eight or ten months prior to the trial, he removed into another neighborhood, some ten miles distant. Assailing the general reputation for truth of the witness H., the defense asked the impeaching witnesses what his general reputation was in the first named neighborhood, which question was disallowed by the court, upon the ground that the evidence of reputation should be restricted to his place of

present residence. *Held,* that the question was a proper one, and the ruling erroneous. See the opinion *in extenso* on the question, and note an approval of the same doctrine as announced in Lum's Case, 11 Texas Ct. App., 483.

2. EVIDENCE — ACCOMPLICE TESTIMONY — CHARGE OF THE COURT.— See the statement of the case for evidence *held* to demand of the trial court a charge upon the law applicable to convictions sought upon the testimony of accomplices.

3. THEFT — OWNERSHIP — EVIDENCE.— Though an unrecorded brand is not admissible in evidence to establish the ownership of the alleged stolen animal, it may be admitted in evidence for the purpose of identifying the animal alleged to be stolen. When admitted for that purpose, however, the court should instruct the jury, by proper charge, that they could consider it for no other purpose.

4. SAME.— The rule which excludes an unrecorded brand as evidence of title does not apply to nor exclude an unrecorded mark when introduced for that purpose. See the statement of the case for evidence *held* sufficient to establish the ownership of the alleged stolen animal.

5. PRACTICE — EVIDENCE — ACCOMPLICE.— In order to strengthen circumstances developed by the proof tending to establish the *status* of two State's witnesses as accomplices, the defense proposed to prove that the general reputation for honesty of each was bad. This proof was rejected by the court upon objection by the State. *Held* correct. See the opinion *in extenso* on the question.

6. ACCOMPLICE — CHARGE OF THE COURT.— See the statement of the case for a special charge which, correctly presenting the law upon the subject of accomplices, was, in view of the evidence on the trial, erroneously refused.

APPEAL from the District Court of Brown. Tried below before the Hon. T. B. Wheeler.

The conviction was for the theft of a steer, the property of George Hill, in Brown county, Texas, on the 20th day of August, 1884. A term of two years in the penitentiary was the penalty assessed against the appellant.

W. W. Hood was the first witness for the State. He testified that on or about August 20, 1884, he saw the defendant in possession of a red and white spotted steer, about four years old, branded on the left side with the figure of a heart under a half circle and the figure of a heart on the left jaw, and marked with a swallow-fork in the left ear and a crop and underbit in the right. The defendant at that time was in Brown county, Texas, about a half mile below the witness's house, in the edge of witness's field, and in the edge of the timber. Bob Bledsoe was with the witness, and they were going after a load of wood. The defendant at that time was trying to rope the steer, and the steer was fighting him. On their return with the wood, witness and Bledsoe saw that defendant had succeeded in roping the steer and had tied him to a

tree.  The defendant afterwards came to the witness's house to borrow an ax with which to cut up the carcass of the steer.  He also borrowed the witness's wagon with which to haul the meat to Sipe Springs.  He brought a quarter of the beef back with him from Sipe Springs, and tried to sell it to witness.  Witness refusing to buy, the defendant gave him the quarter.

Cross-examined, the witness testified that he and Bledsoe spoke to the defendant when they passed him on their way after wood. He could not, however, remember what was said either by himself, Bledsoe or the defendant.  The witness could not now remember whether or not he and Bledsoe stopped when they saw and passed the defendant and the steer.  They passed them at the distance of about twenty yards.  When the witness and Bledsoe returned they found that defendant had roped the steer and secured him to a tree, and was chunking him around the tree.  All the parties spoke again, but witness could not remember what was said by either.  The defendant was on foot.  Witness did not know the steer, nor had he ever seen it before so far as he could remember.  Defendant did not tell the witness that he owned or did not own the steer, nor did the witness ask him anything about the ownership of the steer.  He did not then tell the witness that he was going to kill the steer, nor did he afterwards tell the witness that he had killed him.  The witness knew that he wanted the ax to cut up the carcass only by reason of the fact that his sleeves were rolled up, and his arms bloody.  Witness had lived within five miles of the defendant and had known him well for five or six years.  The defendant carried the carcass of the steer off in the witness's wagon, working his own horse and Bob Bledsoe's.  Bledsoe went with the defendant to take the beef to Sipe Springs.  They got back about 1 o'clock on the next day.  They brought back with them one of the quarters, which the defendant said he failed to sell in Sipe Springs and offered to sell to the witness.  Witness declining to buy the meat, the defendant gave it to him.  Bob Bledsoe was the witness's brother-in-law, and lived at the witness's house.  Witness did not aid in butchering the beef and did not examine the hide.  Witness knew the mark and brand on the animal by having seen them while defendant was chunking the steer around the tree.  During its race around the tree, the steer presented both sides to witness.  Witness was before the grand jury of Brown county in September, 1884. It was not true that the defendant detected witness and Bledsoe butchering the steer, and that they indicted him to avert indictment themselves upon his testimony.  No one was present when the de-

fendant applied to the witness at his house for the loan of the ax, and no one heard the conversation that then transpired between the witness and the defendant. Witness had lived at his present residence nearly two years.

Bob Bledsoe, testifying for the State, corroborated the witness Hood, and stated in addition that he went with defendant when the latter took the beef to Sipe Springs. On the way to Sipe Springs defendant threw the hide of the animal out of the wagon into the bushes. Witness then for the first time suspected the defendant of having killed an animal which he did not own. Defendant did not sell the beef in Sipe Springs, but started home with it and threw all of it, save one of the quarters, out on the side of the road. The remaining quarter he brought home and gave it to Hood, after failing to sell it to him.

Cross-examined, the witness testified that he was living with his brother-in-law, Hood, at the time the steer was killed. Witness had known the defendant some five or six years. Defendant lived about five miles distant from Hood's house. Witness did not ask nor did the defendant say where he got the steer, how he came by it, or why he butchered it. Defendant was on horseback when witness and Hood, *en route* home with their wood, saw him with the steer tied. He rode up to the wagon in which witness and Hood were seated, and talked to them. He asked witness to aid him in butchering the steer, which the witness agreed to do. Hood and witness drove on to the house, and defendant followed and got a rope at Hood's house, with which " we " returned and tied the steer, and the defendant killed the animal by stabbing him with his knife. Defendant got Hood's wagon, and witness and defendant took the meat to Sipe Springs. Witness did not know why defendant did not sell the meat.

George Hill testified, for the State, that he owned a red steer with some white about his head, back and belly. He was marked and branded in the manner described by the witnesses Hood and Bledsoe, and was five years old in 1883. He ran on the range at the head of Hog creek, near and around W. W. Hood's place, in Brown county. Witness called him a red steer with a white back and belly, but others might call him a white and red pied animal. Witness had not seen or heard of that animal since August, 1884. He had never given his consent to the defendant to take that steer.

Defendant's father testified, in his behalf, that the defendant left his home on the 11th day of August, 1883 (1884?), and did not return until about the 27th of August.

The special instruction referred to in the sixth head-note of this report, and which was refused by the court, reads as follows:

"A conviction cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. Nor can one or more accomplices corroborate each other, but the evidence must be from some other source. An accomplice, in the sense used in the foregoing, means any one connected with the crime committed, either as a principal or otherwise."

The motion for new trial raised the questions discussed in the opinion.

*Scott & Jenkins*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. This is a conviction for the theft of a steer, the property of George Hill.

Hood and Bledsoe were the only witnesses by whom the State established the charge against defendant. Hill, the alleged owner, testified that he owned a certain steer of the same color, brand and marks as the one Wood and Bledsoe swore that defendant killed, and that he had not given his consent to the taking. It appears that Hood had lived seven or eight years in a certain neighborhood, and that some eight or ten months prior to the trial of this cause, he had left and settled in another neighborhood, within about ten miles of the first.

Upon the trial defendant attempted to prove that Hood's general reputation for truth and veracity in the first neighborhood was bad. This was not permitted by the court, and he reserved his bill of exceptions. We gather from the various bills of exceptions relating to this matter (for there are several), that the learned judge labored under the belief that the testimony as to character must be confined to his reputation in the neighborhood in which the witness then, at the time of the trial, lived.

This view of the question is erroneous. Upon this subject Mr. Wharton, in his work on Evidence, says: "The impeaching witness, it has been frequently ruled, must be asked, as a preliminary question, as to the impeached witness's general character or reputation for truth and veracity in the community in which he has lived. It is inadmissible to ask what character the impeached witness had in

a neighborhood in which he was a non-resident; or at a period long prior to that of the trial."

A witness may not have acquired a character either as a truthful or untruthful person because of the very short length of time he has resided in the community of his present domicile, and still in his previous neighborhood his character may be formed and established. To hold that the party against whom he has testified is confined to his last neighborhood,— that in which the witness resides at the time of the trial,— would, in a great many cases, be a subversion of the law permitting this method of impeachment. As in this case, not having resided in his present community a sufficient time, no character is developed to his neighbors, and hence the party to be affected by his evidence could not impeach him in this manner at all. But, as we have found, a party will not be deprived of this right if he can prove that in a prior community the witness has developed a character among his neighbors. Persons acquainted with this character,— that developed in other communities than the one in which he now lives,— may swear to his reputation,— that made in the neighborhood in which the witness formerly lived. We will not further discuss the question, as it has been determined by this court in favor of the position of appellant. (*Lum* v. *The State*, 11 Texas Ct. App., 483.)

We will not analyze the testimony of Hood and Bledsoe, nor discuss the same with relation to the surrounding facts, feeling certain that when closely scrutinized it will place those men at least in a very suspicious attitude. If not accomplices beyond question, evidently the facts and surroundings are so suspicious that the question of accomplice or no accomplice should have been submitted to the jury, and the jury properly instructed as to the rule in the event they should believe them or either of them to be accomplices.

Neither Hood nor Bledsoe knew the steer to be the property of Hill; all that they knew upon this subject was that defendant killed, butchered, etc., a certain steer of a certain color, with certain marks and brands. Hill swears that he owned, in August, 1884, a steer suiting the description of, and marked and branded with the same mark and brand as the one said by Hood and Bledsoe to have been killed by defendant. Hill does not pretend to say that the steer killed by defendant was his property; nor does either Hood or Bledsoe state that said steer was the property of Hill.

The brand not being recorded as the law directs, appellant insists that proof that Hill was the owner of the steer was not sufficient, and hence a new trial should have been granted.

Now unless the brand was recorded it cannot furnish any evidence of ownership of the steer whatever. It, however, is admissible, not to prove title in Hill, but for the purpose of identifying the steer so that the witnesses may prove title in Hill by other methods, such as flesh-marks, etc. And when admitted in evidence the court should, by proper instructions, inform the jury for what purpose an unrecorded brand could be used. The statute which excludes unrecorded brands as evidence of title or ownership does not apply to unrecorded marks, and hence, in passing upon the sufficiency of the evidence to prove title in Hill, we must take into consideration the mark as well as all the other facts bearing upon this point.

Looking, then, to all the facts relating to the question of ownership, we are not prepared to say that the proof of ownership in Hill was not sufficient.

Appellant proposed, for the purpose of strengthening the other circumstances which tended to prove that Hood and Bledsoe were accomplices, to prove that their general reputation for honesty was bad. To this the district attorney objected, and the court sustained the objection; to which the defendant excepted and reserved his bills of exceptions.

In *Dubose* v. *The State*, 10 Texas Ct. App., 230, we held that any and all testimony which would be competent if the witness himself was on trial for the offense was also admissible to prove that the witness was an accomplice; and this rule obtains without reference to whether the party on trial is indicted as an accomplice, principal or accessary.

To illustrate: suppose that the party is being tried as a principal; evidence which would be competent if the witness were on trial as principal, accomplice or accessary would be admissible to show that the witness was an accomplice either as principal, accomplice or accessary. We, however, have not found any authority for extending the rule so as to admit evidence for the purpose of establishing that a witness was an accomplice that would not be competent if the witness himself were on trial for the same offense either as principal, accomplice or accessary. If, therefore, Hood or Bledsoe was on trial, either as principal, accomplice or accessary, for the theft of Hill's steer, would it be competent for the State to prove that his general reputation for honesty was bad? Evidently not. We therefore conclude that there was no error in rejecting the proposed evidence.

For the error in refusing to give in charge to the jury the special in-

structions asked by appellant upon the subject of accomplices, and because the court refused to permit appellant to prove the general bad character of Hood in the community in which he had formerly lived, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 25, 1885.]